STATE of Iowa, Appellee,

v.

Daniel M. MEHNER, Appellant.

No. 90–1876.

Supreme Court of Iowa.

Feb. 19, 1992.

Rehearing Denied March 20, 1992.

___

John O. Moeller, Davenport, for appellant.

Bonnie J. Campbell, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., William E. Davis, County Atty., and Realff Ottesen, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and ANDREASEN, JJ.

ANDREASEN, Justice.

Daniel M. Mehner was convicted of two counts of delivery of cocaine and one count of possession of cocaine with intent to deliver. The district court imposed enhanced penalties upon Mehner because the jury found he was in immediate possession of a firearm while committing two of the offenses. On appeal, Mehner challenges the legality of the search of his residence, the admissibility of certain evidence received during trial, the constitutionality of the statutory firearm enhancement provision, and the sentences imposed by the court. Finding no constitutional violations or trial error, we affirm.

In February 1990, Scott county sheriff's officers with assistance of agents of the division of narcotics enforcement (DNE) of the department of public safety began an undercover investigation into a drug operation. Initial information regarding a potential sale of cocaine was provided by a paid informant. On February 28, the informant and a DNE agent purchased cocaine from Sue Merideth and Arthur Carle. The purchase was made while under the surveillance of a team of sheriff deputies and DNE agents. On March 15, the informant arranged for the purchase of a larger quantity of cocaine from Merideth and Carle. The buy was to take place at the Merideth residence later that day.

Based upon this information, an application for issuance of a search warrant was prepared and presented to a district associate judge. The judge issued a warrant authorizing the search and seizure of drugs, weapons, cash, and property used in the furtherance of illegal drug activities. The warrant described the places to be searched as "all residences and out buildings of Chester E. and Susan D. Merideth located at 14591 61st Avenue, Davenport, Iowa, legally described as Lot 006 and Lot 002 in Revelle's Plat...." After the second purchase of cocaine had been completed by the informant, sheriff's officers and DNE agents executed the warrant in a raid on the Merideth property.

During the raid, Daniel M. Mehner was arrested and the trailer home he occupied was searched; drugs, numerous loaded firearms, and cash were seized. Mehner was charged with two counts of delivery of cocaine and one count of possession of cocaine with intent to deliver. Iowa Code § 204.401(1)(c) (1989 Supp.).

Prior to trial, Mehner filed a timely motion to suppress all items seized during the search of his residence. Iowa R.Crim.P. 11. Following hearing, District Judge Edward B. deSilva, Jr., denied Mehner's motion to suppress.

At trial, District Judge James R. Havercamp overruled Mehner's chain of custody objection to the admission of exhibits identified as the substances purchased and delivered to the informant. Judge Havercamp also allowed testimony that Mehner had furnished a deputy sheriff with the combination to a locked safe over Mehner's objection that the testimony was beyond the scope of the minutes of testimony. The jury found Mehner guilty as charged and that he was in immediate possession of a firearm while committing two of the offenses.

For delivery of cocaine on February 28, 1990, the court sentenced Mehner to serve an indeterminate term of ten years; for delivery of cocaine on March 15, 1990, the court sentenced him to serve an indeterminate term of twenty years; and for possession of cocaine with intent to deliver on March 15, 1990, the court sentenced him to serve an indeterminate term of twenty years. The court ordered the sentences to run consecutively and also imposed fines totaling $30,000. The court advised Mehner that he must serve the mandatory minimum sentences. Mehner appeals from the judgment of convictions and the sentences imposed.

I. *Search Warrant.*

Mehner asserts the court erred in overruling his motion to suppress evidence seized in the execution of the search warrant. He claims the warrant was insuffi-

cient on its face to justify a search of his residence and that if the warrant authorized the search of the residence of another, it was inapplicable to or illegally executed upon his residence. He suggests the warrant identified the place to be searched as the residence of Merideth, not his residence. He asserts his constitutional rights were violated by admission of the evidence at trial.

■ Under the exclusionary rule, evidence obtained in violation of the fourth amendment may not be used in criminal proceedings against the victim of an illegal search and seizure. *State v. Baldwin,* 396 N.W.2d 192, 194 (Iowa 1986). One of the specific commands of the fourth amendment is that "no warrant shall be issued, but upon probable cause, supported by oath or written affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ In determining whether probable cause exists, the judge or magistrate has a right to consider all the information set forth in the application. Our review is limited to consideration of only that information, reduced to writing, which was actually presented to the judge or magistrate at the time the application for warrant was made. *State v. Seager,* 341 N.W.2d 420, 426 (Iowa 1983). Because warrants are preferred, we resolve all doubts in favor of their validity. *State v. Bishop,* 387 N.W.2d 554, 558 (Iowa 1986).

In reviewing the magistrate's determination of probable cause, we have often stated:

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*State v. Weir,* 414 N.W.2d 327, 329–30 (Iowa 1987) (citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

The obvious purpose of requiring a particular description of the place to be searched is to minimize the risk that the officers executing search warrants will by mistake search a place other than the place intended by the magistrate. In addition, the requirement of particularity is related to the probable cause requirement. 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.5 at 206–07 (1987). The test for determining the sufficiency of the description of the place to be searched is:

Whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.

*United States v. Gitcho,* 601 F.2d 369, 371 (8th Cir.) *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).

Among the factors the Eighth Circuit has relied upon in upholding searches conducted under the authority of a warrant inaccurately describing the place to be searched are (1) whether one part of the description of the premises to be searched is inaccurate, but the description has other parts which identify the place to be searched with particularity; (2) whether the premises intended to be searched are adjacent to those described and are all under the control of the defendant; and (3) whether the premises which are intended to be searched had previously been surveilled or were being surveilled while the warrant was obtained. *Id.* at 371–72; *see also United States v. Ridinger,* 805 F.2d 818 (8th Cir.1986); *United States v. Clement,* 747 F.2d 460 (8th Cir.1984); *State v. Morales,* 395 N.W.2d 655, 658 (Iowa App. 1986); *State v. Groves,* 239 Neb. 660, 477 N.W.2d 789 (1991).

Here, the search warrant was accompanied by the application, attachments, affidavits, and endorsements. Attached to the

warrant was: (1) a copy of a recorded contract for the sale of tract two of Revelle's Auditor's Plat to Charles DeSmet and Susan Merideth, including a double-wide mobile home; (2) a copy of a recorded deed conveying lot six of Revelle's Auditor's Plat to Chester E. Merideth and Susan D. Merideth; and (3) an aerial photo of the described area.

The affidavits of sheriff's deputy Mike Brown stated the February 28 purchase of cocaine had been made in the trailer that was the residence of Sue Merideth located on a farm approximately one-half mile west of Bluegrass on Telegraph Road. That "Sue Merideth owns the entire property including two trailers, barn, horses, etc." Brown had "wired the informant with a body mike" and all conversations were heard and recorded. Before completion of the purchase, Merideth said she had the cocaine but needed to make a call to the next door trailer. After this Merideth "walked over to the trailer located on her property." The informant and DNE agent Rouse remained in the Merideth residence and talked to Carle. Carle stated that Merideth "kept cocaine at the other trailer." That is where she went to get it. When Merideth returned the sale was completed. The informant turned over $250 to Merideth for one-eighth ounce of cocaine. She told the informant that he could get more from her if he wanted it.

On March 15 the informant contacted Merideth and Carle to arrange for the purchase of one-half ounce of cocaine for $900 later that same day. The warrant was then issued prior to the purchase.

Although the warrant identified the places to be searched as residences and out buildings of Chester and Susan D. Merideth, it also identified the residences as being located on land described as lot six and two in Revelle's Plat. The executing officer could locate and identify the places to be searched with reasonable effort. There was no reasonable probability that another premise might be mistakenly searched. The location of the two lots of Revelle's Plat in rural Scott county owned by Merideth were particularly identified in the attached recorded contract and deed. The location of the residences to be searched were clarified by the descriptions of the trailers in the affidavits and by the aerial photo. As in *Gitcho*, the agents executing the warrant personally knew which premises were intended to be searched, the premises had been under surveillance, and the premises which were intended to be searched were, in fact, those actually searched.

In *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), officers learned that the warrant authorizing the search of one location actually described two locations. The Supreme Court found the warrant was valid when issued. The affiant believed the third floor of a building was a single apartment; the warrant was issued for the search of that apartment. In executing the warrant, the officers discovered drugs in a second apartment on the third floor. The Supreme Court concluded the officer's failure to realize the overbreadth of the warrant was objectively understandable and reasonable.

 In contrast, the warrant for search of residences on Merideth property was issued upon information that drug sales were transacted in the Merideth trailer and that the drugs were secured from and were located in the adjacent trailer on land owned by Merideth in which Mehner resided. There was no mistake as to the locations where drug activity was taking place. A single warrant may authorize the search of more than one location provided the facts and circumstances of the application for the warrant show a fair probability that drugs or evidence of a crime will be found at each of the locations described. The court did not err in denying Mehner's motion to suppress.

On appeal, Mehner argues the officers failed to knock and announce before entering his trailer in violation of Iowa law. Iowa Code § 808.6. This issue was not raised in the motion to suppress. It was first raised in a memorandum filed after the suppression hearing. The issue is not preserved for review on appeal. *State v.*

*Higginbotham,* 351 N.W.2d 513, 516 (Iowa 1984).

## II. *Evidentiary Issues at Trial.*

■ A. Mehner claims the court erred in overruling his chain of custody objections regarding packages of cocaine delivered to the informant. The State has the burden to establish it is reasonably probable that tampering or substitution did not occur. *State v. Orozco,* 290 N.W.2d 6, 10 (Iowa 1980). This burden is heavier when the exhibit offered is an item that is very susceptible to tampering such as drugs. *Id.* The trial court may be aided by the presumption that state agents would not tamper with the exhibit. *Id.* Admission of evidence over a chain of custody objection is a matter within the trial court's discretion and reversal is warranted only when a clear showing is made that the discretion was abused. *State v. Houston,* 439 N.W.2d 173, 178 (Iowa 1989).

Here, officer Brown had worked with the informant for the previous six years. The informant had never been accused of any crime and had not used or sold drugs. At the first drug buy on February 28, the informant was accompanied by DNE agent Rouse. The purchase of cocaine was made in the Merideth trailer. After the purchase, the informant placed the cocaine in his pocket. After leaving the trailer, the informant gave the bag of cocaine to agent Rouse. Rouse proceeded to the DCI office where she field tested the cocaine. The field test positively identified the substance purchased as cocaine. Rouse then packaged the evidence and it was sent to the DCI lab for further testing.

At the second drug buy on March 15, the informant again wore a body microphone and transmitter. Several officers and DNE agents were near the Merideth property at the time of the sale. The informant left the trailer after completing the purchase and delivered the cocaine to a law enforcement agent one block away. The officer searched the informant to make certain he had nothing else on him.

■ In both transactions the informant had possession of the cocaine for only a few minutes. He was with agent Rouse during the first purchase and was alone following the second for only the time it took to drive approximately one block. Although the informant was paid, the court could reasonably conclude the State had established that it was reasonably probable that there had been no tampering with the evidence.

B. Mehner claims the court erred in allowing officer Marxen to testify about a conversation he had with Mehner regarding the combination to a locked safe. After Mehner had been arrested and placed in a squad car, he was asked to furnish the combination to a safe located in his trailer. He provided the requested combination and the safe was opened. The safe contained several baggies of cocaine, over $10,000 in cash, and a fully-loaded 9 mm handgun. A check of the serial numbers of the money found in the safe revealed that the safe contained two $100 bills used by the informant in the February 28 cocaine purchase.

Prior to trial, Mehner filed a motion requiring disclosure of any oral statement made by him which the State intended to offer in evidence at the trial. Iowa R.Crim.P. 13(2)(a). The State responded that such statements were incorporated as a part of the minutes of evidence filed with the trial information.

■ The minutes of evidence must provide a full and fair statement of the witness' expected testimony. Iowa R.Crim.P. 5(3). The minutes of testimony need only be sufficient to alert the defendant generally to the source and nature of the evidence against him. *State v. Lord,* 341 N.W.2d 741, 743 (Iowa 1983).

Here, the minutes of testimony stated officer Marxen would testify that he conducted a search of the Mehner trailer. At the time the search began Mehner was searched and a vial of cocaine with a measuring lid was found on his person. After advising him of his *Miranda* warnings, a conversation was had in which he indicated that everything else he had was in the first room down the hall and pointed out an office room with a desk in it.

Upon a search of that room, a large amount of drug paraphernalia was found and in a safe were found a substantial quantity of cocaine and cash. For further details as to the items, please see the inventory attached.

■■■ The court did not abuse its discretion in overruling Mehner's motion to exclude testimony that he had provided officer Marxen with the combination to the safe. The minutes of evidence alerted him generally to the source and nature of the evidence relating to the search and seizure of the safe. The minutes of testimony reasonably alerted him as to the conversation he had with the officer after receiving a *Miranda* warning relating to the location of drugs and money.

### III. *Firearm Enhancement Provision.*

Mehner challenges the constitutionality of Iowa Code section 204.401(1)(e) (1989 Supp.) which provides:

A person in the immediate possession or control of a firearm while participating in a violation of this subsection shall be sentenced to two times the term otherwise imposed by law, and no such judgment, sentence, or part thereof shall be deferred or suspended.

Subsection 204.401(1) makes it unlawful for any person to deliver or possess with intent to deliver a controlled substance. When the controlled substance is cocaine, subsection 204.401(1)(c) provides that the violation is a class "C" felony and shall be punished by a fine of not less than $1000 nor more than $50,000. Upon conviction, a person guilty of a class "C" felony shall be confined for no more than ten years. Iowa Code § 902.9(3).

Mehner claims the penalty enhancement provision is vague and overly broad. We have recently reviewed the principles to be followed when a criminal statute is challenged for constitutional vagueness. *State v. Duncan,* 414 N.W.2d 91, 95–97 (Iowa 1987). In *Duncan* we stated:

The person challenging a statute carries a heavy burden of rebutting the presumption of constitutionality. If the statute can be made constitutional by a reasonable construction, the court will give it that construction. Thus, a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the constitution. The unconstitutional vagueness of a criminal statute must be demonstrated beyond a reasonable doubt. A statute is not unconstitutionally vague if the meaning of the words used can be fairly ascertained by reference to similar statutes, other judicial determinations, the common law, the dictionary, or the common and generally accepted meaning of the words themselves. (Citations omitted).

414 N.W.2d at 95.

■■■ Mehner argues the statutory requirement of *immediate* possession or control is facially vague. The word possession has more than one meaning. It is interchangeably used to describe actual possession and constructive possession. However, when the word immediate is used to modify the word possession, the term immediate possession becomes clear without double meaning.

Using some of the reference material identified in *Duncan,* the term immediate possession has a clear meaning. For example, the dictionary defines the word immediate as "near at hand, not far apart or distant." Webster's Third New International Dictionary 1129 (1971). The term immediate control or possession has also been judicially equated to mean the area which may be searched incident to arrest. *See, e.g., Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Other courts have referred to immediate control or possession in the same or substantially similar manner. *See* 33 Words and Phrases, Possession, 89 (1971 & Supp.) and cited cases. Finally, immediate possession has been described in terms of actual possession: " 'possession' means having something in one's power. Actual possession exists when the thing is in immediate possession or control of the party." *Rodella v. United States,* 286 F.2d 306, 311 (9th Cir.1961) (citations omitted).

Here, the court instructed the jury as follows:

The word "possession" includes actual as well as constructive possession....

A person who has direct physical control of something on or around his person is in actual physical possession of it.

A person who is not in actual possession, but who has both the power and the intention to later take control over something either alone or together with someone else, is in construction possession of it....

To have immediate possession of a firearm it must be actual possession of it as defined above.

The term immediate possession is not vague. It specifically states what is prohibited and what must be shown in the prosecution. The jury was properly instructed as to the meaning of this term.

Mehner has also failed to establish that the statute is overbroad for constitutional purposes. We review Mehner's challenge in accordance with the following standard: "A statute is overbroad, for constitutional purposes, if it not only forbids conduct constitutionally subject to proscription, but also sweeps within its ambit those actions ordinarily deemed constitutionally protected." *State v. Todd*, 468 N.W.2d 462, 465 (Iowa 1991) (citations omitted).

■ Although Mehner argues the constitution gives him the right to possess firearms, the statute involved prohibits only the possession of firearms while participating in a drug offense; a criminal activity. The statute does not forbid conduct which is constitutionally protected.

IV. *Sentencing.*

Iowa Code section 901.5 and Iowa Rule of Criminal Procedure 22(3)(d) requires a sentencing judge to consider the available sentencing options and to state on the record the reason for selecting a particular sentence.

[T]he main purpose of the requirement in rule 22(3)(d) that a court state its reasons for a particular sentence is to allow us to review the sentence to determine if there has been an abuse of discretion. The statement may be sufficient, even if terse and succinct, so long as its brevity does not prevent review of the exercise of the trial court's discretion. Where the record shows that the sentencing court exercised its discretion, this court will not interfere with an otherwise valid sentence 'unless the defendant shows that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'

*State v. Kirchoff*, 452 N.W.2d 801, 806 (Iowa 1990). Iowa Code section 901.8 provides that a judge may consider and impose consecutive sentences.

■ We think the record demonstrates that the court appropriately weighed a number of factors and made a sufficient statement of its reasons for imposing the enhanced penalties and consecutive sentences. The court stated Mehner was in the business of selling cocaine and that it was an "extremely dangerous activity to be performed in our community." In support of this statement, the court continued: "the legislature has recognized the seriousness of the offense. If you are convicted of delivering cocaine and being in possession of a firearm there is a special enhancement. I think its appropriately found in this case and appropriately applied." Furthermore, the court specifically stated it looked to the presentence investigation and stated that Mehner's previous minor infractions were not at issue. Rather, the court stated "we're really here to determine what the appropriate sentence for a cocaine dealer in the city of Davenport at this point in time." It was an acknowledged fact that Mehner was a dealer of cocaine and had been for a number of years. We cannot say, in reviewing the record, that the district court abused its sentencing discretion, nor did it fail to make a statement of its reasons.

Finally, we summarily dispose of Mehner's claim that the imposition of consecutive sentences violates the double jeopardy clause; it does not. *See Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 543–44 (1985).

AFFIRMED.